IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NAUTILUS INSURANCE COMPANY, | ) <br> ) <br> ) |
| Plaintiff, | ) |
| | ) Case No. |
| -v- | ) <br> ) |
| WSP USA, INC., F/K/A PARSONS BRINCKERHOFF, INC., F/K/A PB AMERICAS, INC.; CARLITOS LOPEZ; AND DIANA LOPEZ | ) <br> ) <br> ) <br> ) |
| Defendants. | ) <br> ) |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Nautilus Insurance Company ("Plaintiff" or "Nautilus"), by and through its attorneys, Duane Morris LLP, complains against defendants WSP USA, Inc., f/k/a Parsons Brinckerhoff Group, Inc., f/k/a PB Americas, Inc. ("PB"), Carlitos Lopez, and Diana Lopez (collectively "Defendants") as follows:

## NATURE OF THE ACTION

1. This is an action for declaratory judgment brought under 28 U.S.C. §§ 1332, 2201, and 2202, and involves an insurance coverage dispute between insurer Nautilus and a non-insured entity PB, which was sued in an action styled *Carlitos Lopez, et al. v. Chicago Transit Authority, et al.*, Cook County Circuit Court, Case No. 14 L 2861 (the "Underlying Action").

2. On information and belief, Liberty Mutual Insurance is currently providing a defense for PB in the Underlying Action and will continue to do so even if declaratory relief is granted in favor of Nautilus.

3. PB asserted, via a tender letter from Liberty Mutual, that PB is entitled to coverage as an additional insured under an insurance contract Nautilus issued to the Illinois-based engineering and scientific consulting firm GSG Consultants, Inc., ("GSG").

4. PB entered into a prime agreement with the Chicago Transit Authority ("CTA") for "On-Call Construction Management Consultant" services. PB also entered into a "Professional Services Subcontract" with GSG. In that Subcontract, GSG was to provide "professional consulting services" on a task order basis.

5. The Subcontract does not require GSG to add PB as an additional insured to any of its policies.

6. By this action, Nautilus seeks a judicial declaration of the parties' rights, duties, and obligations under the Nautilus policy with respect to PB's defense and indemnity in the Underlying Action.

7. Specifically, Nautilus seeks a judicial declaration that it does not owe a duty to defend and indemnify PB under the Nautilus policy.

**PARTIES**

8. Nautilus Insurance Company is and was, at all times herein mentioned, a corporation organized and existing under the laws of the State of Arizona, with its principal place of business in Scottsdale, Arizona.

9. Nautilus is informed and believes, and on that basis alleges, that defendant WSP USA, Inc., f/k/a Parsons Brinckerhoff, Inc., f/k/a PB Americas, Inc. ("PB") is and was, at all times mentioned, a corporation organized and existing under the laws of the State of New York, with its principal place of business in in New York City, New York. Nautilus alleges that at all

relevant times PB was authorized to do business in the State of Illinois, and maintained a registered agent in Chicago, Illinois.

10. Nautilus is informed and believes, and on that basis alleges, that defendant Carlitos Lopez is a citizen of the State of Illinois.

11. Nautilus is informed and believes, and on that basis alleges, that defendant Diana Lopez is a citizen of the State of Illinois.

## **JURISDICTION AND VENUE**

12. Jurisdiction is proper in this Court under 28 U.S.C. § 1332 because complete diversity exists between the parties and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

13. Defendant PB is subject to personal jurisdiction in this District because it maintains a registered agent in this District. Defendant PB also conducts substantial business and has sufficient minimal contacts within this District such that the exercise of personal jurisdiction over it is fair and reasonable.

14. Defendants Carlitos and Diana Lopez are subject to personal jurisdiction in this District because both reside in this District.

Venue is proper in this Court under 28 U.S.C. §§ 1391(a)(1), (b)(1)-(3), (c)(1)-(2), (d), because Defendants reside in, and/or are subject to, personal jurisdiction in this District, and because the insurance contract at the heart of this controversy was, upon information and belief, delivered and performed in this District. Further, the Underlying Action is pending in the Circuit Court of Cook County.

**THE INSURANCE CONTRACT**

15. Nautilus, through its authorized administrator, Berkley Specialty Underwriting Managers, LLC ("BSUM"), issued an environmental combined commercial lines liability policy to named insured GSG Consultants, Inc., for the policy period August 13, 2012 to August 13, 2013 ("the Policy"). The Policy number is ECPO1519898-12, and a true and correct copy with redactions of non-relevant material is attached as **Exhibit 1**.

16. The Policy includes commercial general liability ("CGL") coverage, contractors pollution liability ("CPL") coverage, and professional liability ("PL") coverage. The CGL portion is listed as Coverage A, which provides coverage in relevant part for "bodily injury" caused by an "occurrence," and Coverage B, which provides coverage for "personal and advertising injury" liability, as defined in the Policy, and subject to all the terms, conditions, definitions, limitations, and exclusions set forth in the Policy. The CPL portion is listed as Coverage D, which provides coverage in relevant part for "bodily injury" resulting from "pollution conditions" as defined by the Policy. The PL portion is listed as Coverage E, which provides claims made and reported coverage in relevant part for sums that result from "professional services," as defined in the Policy, and subject to all the terms, conditions, definitions, limitations, and exclusions set forth in the Policy. Each of these coverages are found on policy form ECPO1000 10 06.

17. The Policy includes a "Professional Liability" exclusion applicable to Coverages A, B, and D, which states that the Policy does not apply to "Bodily injury, property damage, or personal and advertising injury based upon or arising out of the rendering of or failure to render professional services." The Policy defines "professional services" to mean "those services

4

performed by you or on your behalf, that are related to your practice as an engineer, consultant, architect, or surveyor that are performed for others for a fee."

18. The Policy includes a "Contractual Liability" exclusion applicable to Coverages A, B, and D, which states that the Policy does not apply to damages for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement (the "Contractual Liability Exclusion").

19. PB is not listed as a named insured to the Policy, either in the declarations or in the Named Insured Endorsement.

20. The Policy contains two sections that grant additional insured coverage to specific persons or entities. First, there is a section titled "Who Is An Insured," which provides in relevant part:

> Solely with respect to Coverages **A, B**, and **D,** your clients, provided a written contract or agreement is in effect between you and the client, and solely with respect to **your work** performed by or on behalf for that client. Such written contract or agreement must be in effect prior to the **occurrence** giving rise to the claim or **suit** for which the client seeks coverage. Your clients are covered under this policy only for Limits of Liability up to and not exceeding the amount required by the written contract or agreement and subject to the Limits of Liability of this policy.

21. The Policy defines "your work" to mean "[w]ork or operations performed by you on your behalf" and includes "[t]he providing of or failure to provide warnings or instructions."

22. Second, the Policy also contains a Blanket Additional Insured endorsement on form ECP 1004 04 10, which *amends* the general liability coverage part, in relevant part, as follows:

> **SECTION III, WHO IS AN INSURED** is amended to include as an insured, with respect to Coverages **A, B** and **D**, any person(s) or organization(s) when you and such person(s) or organization(s) have agreed in a written contract or written agreement that such person(s) or organization(s) be added as an additional insured on

your policy. Such written contract or written agreement must be in effect prior to the performance of your work which is the subject of such written contract or written agreement.

23. To the extent that the Blanket Additional Insured endorsement contradicts the base form, the endorsement controls.

24. There is no additional insured grant with regards to Coverage E, for professional liability. As a result, Nautilus knows of no basis for implicating Coverage E's Professional Liability coverage for the claims against PB in the Underlying Action and knows of no basis for PB being an insured under Coverage E.

## THE SUBCONTRACT

25. PB entered into a Subcontract with GSG effective October 27, 2011, that is formally entitled the "Professional Services Subcontract" (the "Subcontract"), which has been produced in the Underlying Action.

26. The Subcontract provides that PB previously entered into a Prime Agreement with the Chicago Transit Authority ("CTA") for "On-Call Construction Management Consultant" services in connection with the CTA's five-year Capital Improvement Program, which included services for CTA's Loop Track Renewal Project. PB, in connection with that program, desired the subcontracting services of GSG.

27. The Subcontract states that GSG was to provide "professional consulting services," to be defined in "task orders".

28. Section Ten of the Subcontract, entitled "Insurance," provides that GSG "shall effect and maintain during the performance of the Subcontract, Chicago Transit Authority (CTA) Insurance Requirements as set forth in Exhibit C, attached hereto and made a part hereof. This insurance shall be at the Subcontractor's own expense ...." The provision also states that GSG shall "furnish PB with certificates of insurance evidencing the required insurance and

6

endorsements evidencing compliance with the additional insured and waiver of subrogation requirements."

29. The CTA insurance requirements, which are attached as Exhibit C to the Subcontract, state that "[t]he CTA must be named as an Additional Insured and Certificate Holder."

30. There is no requirement in the Subcontract or the CTA insurance requirements that PB be added as an additional insured to any of GSG's insurance policies.

## THE UNDERLYING ACTION[1]

31. In March 2014, Carlitos Lopez and his wife, Diana Lopez, filed the Underlying Action against the CTA in the Circuit Court of Cook County.

32. In the Underlying Action, Plaintiffs allege that in March 2013, while working on an elevated train platform as an employee of Rail Works Corporation, Inc., Carlitos Lopez fell to the ground and sustained serious injuries.

33. In January 2015, the Lopezes filed a First Amended Complaint at law and added Parsons Brinckerhoff, Inc., PB Americas, Inc. (collectively "PB") and as additional defendants (the "First Amended Underlying Complaint"). A copy of the First Amended Underlying Complaint is attached hereto as **Exhibit 2**. The First Amended Underlying Complaint sets forth two causes of action based upon PB's negligence. (Ex. 3, Counts III and IV.)

## THE TENDER, RESPONSE, AND THIRD-PARTY COMPLAINT

34. In March 2015, Liberty Mutual Insurance sent a letter to GSG Consultants, Inc., tendering the defense and indemnification to GSG "for this loss on behalf of Parsons Brinckerhoff Group, Inc. and PB Americas, Inc.," based on the language of the Subcontract. The

---

[1] Nautilus does not admit the truth of the allegations in the Underlying Action or third-party complaint but refers to them to illustrate the nature of the claims alleged in that action.

letter includes a copy of the Amended Complaint and the Subcontract, and asks that GSG provide the letter to its insurance carrier so they can review and respond.

35. In April 2015, Nautilus sent an acknowledgment of claim to GSG. Between April 2015 and May 2017, Nautilus and Liberty Mutual discussed Liberty's tender to GSG, whereby Nautilus sought additional information and clarification as to GSG's role at the site where Carlitos Lopez was allegedly injured. During the course of those discussions, Nautilus continued to fully reserve its rights and defenses in accordance with the terms of the Policy. Nautilus was advised by Liberty that GSG was an "engineering consult on this project" and that GSG did not have an active role at the site.

36. On August 15, 2017, PB filed a third-party complaint for breach of contract against GSG in the Underlying Action.

37. In the third-party complaint, PB alleges that any liability attributed to it for its construction management services in the Underlying Action "would be the result of an arising from the errors, omissions, and/or negligence of GSG" in complying with its duties under the Subcontract.

38. Nautilus is currently defending GSG against the allegations in the third-party complaint under reservation of rights.

39. On April 17, 2018, Nautilus disclaimed coverage for PB via letter sent to Liberty Mutual and PB.

## COUNT I – DECLARATORY RELIEF
### (PB Is Not a Covered Insured)

40. Nautilus reasserts and incorporates the allegations of Paragraphs 1 - 39 as though fully set forth herein.

8

41. PB is not an insured under the Policy because PB is not a named insured and does not fall within either of the two additional insured coverage grants: (1) there is no contract requiring PB be added as an additional insured to the policy; and (2) the alleged damages claimed against PB in the First Amended Underlying Complaint are not "solely with respect to" GSG's work performed by or on behalf of PB.

42. Nautilus has no duty to defend or indemnify PB in connection with the Underlying Action under the Policy on the basis that PB is not a covered insured.

43. An actual, present and justiciable controversy has arisen between Nautilus and PB concerning whether PB is an insured under the Policy.

44. Nautilus seeks declaratory judgment from this Court that Nautilus has no obligation to defend or indemnify PB in connection with the Underlying Action under the Policy.

WHEREFORE, Nautilus prays that this Court:
 a. Enter judgment on Count I in favor of Nautilus and against Defendants;
 b. Declare that Nautilus has no obligation to defend or indemnify PB in connection with the Underlying Action under the Policy;
 c. Award Nautilus its costs of suit; and
 d. For such other and further relief as the Court deems just and proper.

**COUNT II – DECLARATORY RELIEF**
**(Coverage Is Barred by the Professional Liability Exclusion)**

45. Nautilus reasserts and incorporates the allegations of Paragraphs 1 – 39 as though fully set forth herein.

46. Even if PB did qualify as an insured under the Policy, it could do so only with respect to Coverages A, B and D, and the Policy includes an exclusion applicable to Coverages

A, B and D that excludes coverage for bodily injury "based upon or arising out of the rendering or failure to render professional services" (the "Professional Liability Exclusion").

47. The Policy defines "professional services" as those services "performed by you or on your behalf, that are related to your practice as an engineer, consultant, architect, or surveyor that are performed for others for a fee."

48. Here, the claims for which coverage is sought fall within the Professional Liability Exclusion because those claims relate to the purported provision of professional services.

49. Nautilus has no duty to defend or indemnify PB in connection with the Underlying Action under the Policy on the basis that coverage is barred by the Professional Liability Exclusion.

50. An actual, present and justiciable controversy has arisen between Nautilus and PB concerning Nautilus' obligations under the Policy.

51. Nautilus seeks declaratory judgment from this Court that Nautilus has no obligation to defend or indemnify PB in connection with the Underlying Action under the Policy on the basis that coverage is barred by the Professional Liability Exclusion.

WHEREFORE, Nautilus prays that this Court:
    a. Enter judgment on Count II in favor of Nautilus and against Defendants;
    b. Declare that Nautilus has no obligation to defend or indemnify PB in connection with the Underlying Action under the Policy;
    c. Award Nautilus its costs of suit; and
    d. For such other and further relief as the Court deems just and proper.

## COUNT III – DECLARATORY RELIEF
### (Coverage Is Barred by the Contractual Liability Exclusion)

52. Nautilus reasserts and incorporates the allegations of Paragraphs 1 – 39 as though fully set forth herein.

53. Even if PB did qualify as an insured under the Policy, it could do so only with respect to Coverages A, B and D, and the Policy includes an exclusion applicable to Coverages A, B and D that excludes coverage for damages for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement (the "Contractual Liability Exclusion").

54. The claims for which coverage is sought fall within the Contractual Liability Exclusion because those claims relate to certain liabilities allegedly assumed by GSG pursuant to contract.

55. Nautilus has no duty to defend or indemnify PB in connection with the Underlying Action under the Policy on the basis that coverage is barred by the Contractual Liability Exclusion.

56. An actual, present and justiciable controversy has arisen between Nautilus and PB concerning Nautilus' obligations under the Policy.

57. Nautilus seeks declaratory judgment from this Court that Nautilus has no obligation to defend or indemnify PB in connection with the Underlying Action under the Policy on the basis that coverage is barred by the Contractual Liability Exclusion.

   WHEREFORE, Nautilus prays that this Court:
   a. Enter judgment on Count III in favor of Nautilus and against Defendants;
   b. Declare that Nautilus has no obligation to defend or indemnify PB in connection with the Underlying Action under the Policy;

      c. Award Nautilus its costs of suit; and

      d. For such other and further relief as the Court deems just and proper.

Dated: April 18, 2018

                              Respectfully submitted,
                              NAUTILUS INSURANCE COMPANY

                              By: /s/ Mark A. Bradford
                              Mark A. Bradford
                              Duane Morris LLP
                              190 South LaSalle Street, Suite 3700
                              Chicago, IL 60603-3433
                              Telephone: (312) 499-0175
                              Facsimile: (312) 277-1091
                              mabradford@duanemorris.com